UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CASE No.:_____

HYDROPRESSURE CLEANING, INC.,
A California corporation,

      Plaintiff,

v.

BLASTERS, INC.,
a Florida corporation,

      Defendant.

_____/

## COMPLAINT FOR PURE BILL OF DISCOVERY
## DEMAND FOR A JURY TRIAL

Plaintiff, HYDROPRESSURE CLEANING, INC. ("HPC"), by and through its undersigned counsel, hereby brings this Complaint for a Pure Bill of Discovery against the named Defendant, BLASTERS, INC. ("Blasters"), and in support thereof states as follows:

### NATURE OF THE ACTION

1. This is an action for pure bill of discovery to identify information of patent infringement and other acts of unfair competition.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action based upon diversity of citizenship pursuant to 28 U.S.C. §1332. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3. This Court also has subject matter jurisdiction over this action because the anticipated claims constitute claims for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §1 *et seq*.

4. This Court has personal jurisdiction over the Defendant because the Defendant has sufficient minimum contacts within the State of Florida and this District, pursuant to due process, as Defendant has purposefully availed itself of the privilege of conducting business in the State of Florida by regularly conducting and soliciting business within the State of Florida and within this District, and because Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Florida and this District. Moreover, this Court has personal jurisdiction over Defendant because it has its principal place of business in this district in the State of Florida, it maintains a registered agent in the State of Florida and has purposefully availed itself of the privileges and benefits of the laws of the State of Florida.

5. Venue is proper in this District under 28 U.S.C. §1391(c) and §1400(b).

## PARTIES

6. Plaintiff, HPC is a corporation duly formed and existing under the laws of California, with its principal place of business located at 413 Dawson Drive, Camarillo, California 93012.

7. Defendant, Blasters is, upon information and belief, a corporation duly formed and existing under the laws of Florida with its principal place of business located at 7813 Professional Place, Tampa, Florida 33637.

## GENERAL ALLEGATIONS GIVING RISE TO THE CLAIM

**A. HPC and the '930 Patent**

8. HPC is a water well service company and the owner of U.S. Patent No. 8,312,930 (the "'930 Patent") which embodies a well restoration device. (the "Device").

9. Jeff Glass, HPC's principal, is the inventor of the '930 Patent and has assigned all rights to HPC.

10. Elements of the Device include:

> a. A head with nozzles that discharge water at a pressure in excess of 15kPSI with a particular angle and rotational speed;
>
> b. A circular plate attached to the nozzle head to maintain the nozzles substantially the same distance from the inside wall of the well casing;
>
> c. A specific arrangement of nozzles on the head;
>
> d. A rotation of the head at 20-50 rpm during high pressure discharge;

      e. A hose designed to withstand high pressure connected to the head; and

      f. A mobile platform having a pump and reel for the coiled tubing.

11. HPC uses the coiled tubing-nozzle head combination to clear obstructions from well perforations or slotted liner located at depth. The device head is lowered into the well to the deepest depth adjacent to the perforations or slotted liner and slowly retracts the coiled tubing while the nozzles are discharging water at high pressure to remove the blockage. The device head rotates while water is discharged through the nozzles.

12. A variation in the water pressure, angle of approach, or head configuration could cause permanent damage to the well casing. The combination of the discharge velocity, pressure, rotational speed of the nozzle head, and retraction velocity of the coiled tubing is also a novel method described in the '930 patent. It is not possible for Plaintiff to discover whether the method described in the '930 patent is being infringed upon without the assistance of this Court.

**B.   Derrick's Well Drilling and Pump Services and the Accident.**

13. In 2019 through 2020, HPC was hired by Derrick's Well Drilling and Pump Services, LLC., ("Derrick's"), to perform jobs awarded by the Hawaii Dept of Water Supply (HDWS) on the Big Island of Hawaii.

14. During a project in 2019 an accident occurred in which a copy of the Device disengaged from its hose and lodged in the well.

15. Derrick's owner, Derrick Moreira ("Mr. Moreira"), informed HPC that he would be off- site and would have to delay HPC's access to extract the Device.

16. Unbeknownst to HPC, Derrick's extracted the Device from the well using third party contractors.

17. Two weeks later HPC was notified by Derrick's that the Device had been extracted.

18. Derrick's demanded payment for the extraction and HPC paid HDWS the sum of $25,000.

19. When HPC arrived on the HDWS well site, it found the Device next to the well with the centering plate removed.  The centering plate cannot be removed accidentally since it requires manually removing lock and nut elements.

20. At about the same time HPC heard statements from third parties that Mr. Moreira had told various people that Derrick's was going to build its own well restoration device.

21. HPC worked on two or three more well restorations for Derrick's. During the time they heard from third parties that Mr. Moreira was saying that Derrick's would have its own tool soon.

22. Derrick's stopped using HPC's services on or about October of 2020.

### C. Blasters and the Accused Device.

23. On or about August 25, 2020, an employee of HPC found an article on the social networking site LinkedIn where Douglas Elliott of Blasters, Inc., posted photos and videos of a well restoration device that they had developed for an undisclosed customer. Blasters is a company that specializes in the research, engineering, and manufacturing of water related devices for third parties.

24. HPC reviewed these photos and a video and determined that they appeared to be near identical to the HPC Device and that they seemed to practice the invention embodied in the '930 Patent.

25. In particular, the accused device ("Accused Device") manifested the same arrangement of nozzles on the head and rotated at what appeared to be 30-50 rpm.

26. At about the same time, Douglas Elliott posted on LinkedIn that Blasters had just developed a project that described the features of HPC's '930 Patent and Device:



27.     This description matches the patented Device.

28.     HPC has reason to believe that the Accused Device described by Blasters is a copy of the HPC's Device and infringes the '930 Patent.

29.     Jeff Glass, owner of HPC, promptly e-mailed Blasters regarding the accused device.  Mr. Glass received a response from Scott Boos, owner of Blasters a week later indicating that he would investigate and respond to the subject email.

30.     At around this time or shortly thereafter, the online articles, photos and videos regarding the Accused Device were removed from LinkedIn.

31. Mr. Glass received a call from Mr. Boos three weeks later. Mr. Boos informed him that Blasters' patent attorney was confident that the accused device did not practice the patent. Mr. Boos further indicated that his brother-in-law had been the person at the company who acquired the client for this project and that the client had specifically requested that its identity not be divulged to HPC. Mr. Boos did not offer to share details of the design.

32. Blasters made no further effort to communicate with HPC or to address HPC's concerns. Blasters did not offer to show the HPC the specifications of the Accused Device. Blasters did not disclose the recipient of the Accused Device.

**D.    Likely damages.**

33. HPC believes that the Accused Device was manufactured by Blasters for Derrick's and that Derrick's has used this device in providing services since October 2020.

34. HPC believes that the Accused Device infringes the '930 Patent.

35. HPC has heard repeated rumors that Derrick's copies its device and has developed and has been using a device that matched the specifications of the Device.

36. On or about October of 2020, Beylik Drilling & Pump Services, Inc, ("Beylik") asked HPC for quotes to work on a new well project that Derrick's was competing for. After being awarded to Beylik, the contracts were rescinded and awarded to Derrick's which used an undisclosed method for clearing the wells.

8

37. On or about August 2021, Beylik asked HPC for quotes on two new well projects.

38. Altogether, significant work has been lost, as the evidence suggests, due to the use of a device that infringed the '930 Patent:

   a. The Kahalu'u B well that Plaintiff was supposed to be contracted to service, but which Derrick's did on its own was a contract worth $120,000;

   b. The Haw! #1 well which had been awarded to Beylik and then the award was rescinded and awarded to Derrick's, was a contract worth $90,000;

   c. The Laupahoehoe well, which had been awarded to Beylik and then the award was rescinded and awarded to Derrick's, was a contract worth $78,000;

   d. The Panaewa A well which Plaintiff was supposed to be contracted to service, but which Derrick's did on its own was, a contract worth $42,500.

39. Upon information and belief, these projects were obtained and performed using an infringing device, bringing the lost revenues arising from the lost business in excess of $300,000.

40. In view of Derrick's access to the Device and its apparent investigations of the Device as described above, there is reason to believe that Derrick's copied the elements of the invention.

41. The images seen by Plaintiff on Blasters' public posting and the features of the Accused Device described in the postings strongly suggest that they

9

copied the protectible elements of the Device for Derrick's. The prompt removal of these materials after HPC contacted Blasters also suggests guilt.

42. It is reasonable that an infringement of the '930 Patent has occurred and continues to occur.

43. Blaster's refusal to disclose the nature of its design has forced the filing of this action.

44. All conditions precedent to the filing of this action have been satisfied or waived.

## COUNT I:  PURE BILL OF DISCOVERY

45. Plaintiff reasserts and incorporates herein the allegations in Paragraphs 1 through 44 above.

46. Plaintiff is the owner of the '930 Patent and has not assigned or otherwise divested itself of any rights associated therewith.

47. The named Defendant and other defendants to be identified have likely infringed Plaintiff's patent rights to the '930 Patent by manufacturing and/or developing the Accused Device, and/or selling, and/or importing, and/or offering for sale, the Accused Device.

48. The information sought by Plaintiff to determine whether or not it has grounds for an action against Defendant and other defendants to be identified, is in the care, custody, and control of the named Defendant.

49. Plaintiff needs discovery regarding the design specifications of the accused device, the identity of the customer who ordered its design and development from Defendant, all communications and documents in Defendant's possession or control regarding Plaintiff, the Device and the '930 Patent, and other related information.

50. Plaintiff anticipates filing a claim or claims against the named Defendant as well as other defendants to be identified, through the discovery sought herein, depending upon reasonable investigation of these matters.

51. Plaintiff has no way of acquiring and preserving the information sought by this Pure Bill of Discovery for use as evidence and for the development of additional evidence in its anticipated claims against Defendant or others, except by the relief sought herein.

52. If the information sought herein is withheld from Plaintiff, beyond applicable statutes of limitation, irreparable injury may be sustained by Plaintiff.

53. Plaintiff is entitled to this information so that it may determine if it has grounds to bring claims for patent infringement against the Defendant and others.

54. The discovery sought is material and necessary to Plaintiff's anticipated actions against Defendant.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter an Order:

(1) providing that the named Defendant respond to early general discovery under the Federal Rules of Civil Procedure as might be initiated by Plaintiff on the subject matter of the Accused Device, and

(2) permitting early depositions of Defendant, its representative and any employees who may have knowledge concerning said subject matter, and

(3) granting Plaintiff such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury as to all issues so triable.

Dated:	This 12th day of January 2022.

Respectfully submitted,

/s/Jorge Espinosa
Jorge Espinosa
Florida Bar No.: 779032
Jorge.espinosa@gray-robinson.com
Francesca Russo
Florida Bar No. 174912
Francesca.russo@gray-robinson.com
**GRAYROBINSON, P.A.**
333 S.E. 2nd Ave., Suite 3200
Miami, FL 33131
Tel: 305-416-6880
Fax: 305-416-6887
*Attorneys for Plaintiff*